# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| MANISTIQUE PAPERS, INC., | ) Case No. 11-12562 (KJC) |
| | ) |
| Debtor. | ) |
| | ) |

## INTERIM ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS; AND (B) GRANT ADEQUATE PROTECTION AND OTHER RELIEF TO RBS CITIZENS, NATIONAL ASSOCIATION

This matter came before this Court on the motion (the "Motion") of Manistique Papers, Inc., a Delaware corporation ("Debtor"), requesting that this Court enter an interim order authorizing Debtor to: (a) use cash collateral on an emergency basis; and (b) grant adequate protection and other relief to RBS Citizens, National Association, a national banking association, as Lender ("Lender"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b), and objections, if any, having been withdrawn or resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT**:

  A.  On the Filing Date, Debtor filed a voluntary petition for relief under chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as a debtor in possession pursuant to Code §§ 1107 and 1108.

  B.  The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. Subject to the terms of Paragraph 6 of this Order, Debtor has stipulated and represented to the Court that: (1) the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship between Debtor and Lender, and are valid and enforceable by Lender against Debtor; (2) as of the Filing Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim, in an amount not less than Eleven Million One Hundred Thousand Dollars and No Cents ($11,100,000.00), exclusive of accrued and accruing Allowable 506(b) Amounts and a prepetition letter of credit in the approximate face amount of Eight Hundred Fifty Nine Thousand Dollars and No Cents ($859,000.00); (3) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (4) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; (5) the Prepetition Liens, among other things, secure payment of all of the Prepetition Debt; and (6) the Prepetition Liens are First Priority Liens, subject only to Permitted Liens.

D. Subject to the terms of Paragraph 6 of this Order, Debtor represents, and the Court finds that, for purposes of Code §§ 506(c) and 507(b), the value of the Prepetition Collateral as of the Filing Date was not less than Eight Million Dollars and No Cents ($8,000,000.00); provided, however, that Lender shall have the right to challenge such representations and such findings at any time.

E. No Committee has been appointed in this Case.

F. An immediate need exists for Debtor to use Cash Collateral in order to maximize the value of Debtor's assets under the circumstances.

G. In order to prevent immediate and irreparable harm to the estate pending the Final Hearing, Debtor needs to use Cash Collateral on an emergency basis as provided herein through the conclusion of such Final Hearing to pay the expenses set forth in the Budget.

H. Under the circumstances of the Case, the terms and conditions of this Order are a fair and reasonable response to Debtor's request to use Cash Collateral, and the entry of this Order is in the best interests of Debtor's estate and its creditors.

I. The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and 9014

and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT:**

1. <u>Authorization to Use Cash Collateral.</u> Debtor is authorized to use Cash Collateral solely: (a) in accordance with and pursuant to the terms and provisions of this Order; and (b) to the extent required to pay those expenses enumerated in the Budget, as and when such expenses become due and payable, subject to the Permitted Variance. Prior to the Termination Date, Debtor may not use or seek to use Cash Collateral other than pursuant to the terms of this Order. Notwithstanding anything to the contrary in this Paragraph 1, however (2) Debtor is authorized and directed to use Cash Collateral to pay Allowable 506(b) Amounts and the Carveout when due and payable.

2. <u>Procedure for Use of Cash Collateral.</u>

(a) <u>Delivery of Cash Collateral to Lender/Return of Cash Collateral to Debtor.</u> Debtor is authorized and directed to deposit all Cash Collateral, regardless of the source of such Cash Collateral, now or hereafter in its possession or under its control into the Blocked Account (or to otherwise deliver all such Cash Collateral to Lender in a manner satisfactory to Lender) promptly upon receipt thereof. Such Cash Collateral (including Cash Collateral which Lender has applied to the Prepetition Debt subsequent to the Filing Date pursuant to Paragraph 5(d) of this Order) shall be remitted to Debtor by Lender and used by Debtor as Cash Collateral to the extent permitted by Paragraph 1 of this Order.

(b) <u>Account Debtors.</u> Without further order of Court, Lender may direct Debtor to, or Lender may directly, instruct all account debtors of existing and future accounts receivable included in the Aggregate Collateral to make payments directly into the Blocked Account or such other accounts satisfactory to Lender, in which event all such proceeds shall be treated in accordance with the provisions of this Order.

(c) <u>Cash Collateral in Lender's Possession.</u> Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control which constitute Aggregate Collateral or proceeds of Aggregate Collateral.

3. Carveout.

(a) Carveout Terms. The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be first paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of Lender) before such payments are made from proceeds of the Aggregate Collateral.

(b) Carveout Usage. No portion of the Carveout and no Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including Debtor or the Carveout Professionals, in connection with claims or causes of action adverse to Lender's interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Lender's consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lender; provided, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals (a) in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Lender, (b) in connection with any successful challenge to Lender's declaration of the occurrence of the Termination Date or of an Event of Default, and (c) in connection with an investigation by the Committee during the Investigation Period. Nothing herein shall be construed as consent by Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis.

4. <u>Termination of Right To Use Cash Collateral.</u>

(a) <u>Termination Date</u>. Upon the Termination Date, without further notice or order of Court: (1) Debtor's authorization to use Cash Collateral hereunder shall automatically terminate; (2) Debtor shall be prohibited from using Cash Collateral for any purpose other than application to the Prepetition Debt; and (3) subject to Paragraph 6 of this Order, Lender shall be entitled to apply any Cash Collateral coming into its possession or control to the Prepetition Debt.

(b) <u>Rights and Remedies</u>. On the fifth (5th) business day after the Termination Date, at Lender's election and without further order of the Court: (1) Lender shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Prepetition Documents and applicable nonbankruptcy law; and (2) if requested by Lender, Debtor shall surrender the Aggregate Collateral and otherwise cooperate with Lender in the exercise of its rights and remedies under the Prepetition Documents and applicable nonbankruptcy law. Notwithstanding the foregoing, during the three (3) business day period following the Termination Date, Debtor may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; <u>provided, however,</u> that during such three (3) business day period, Lender shall have no obligation to permit the use of any Cash Collateral.

(c) <u>Collateral Access</u>. Upon written notice to the landlord of any of Debtor's leased premises that an Event of Default has occurred and is continuing, Lender may enter upon such leased premises (provided Lender has at that time relief from the automatic stay to exercise its rights with respect to such Prepetition Collateral) for the purpose of exercising any right or remedy with respect to the Prepetition Collateral located thereon and shall be entitled to Debtor's rights and privileges under such lease(s) without interference from such landlord. In such event, Lender will comply with the Debtor's payment obligations to the Landlord solely with respect to Lender's period of occupancy or possession.

5. <u>Adequate Protection of Interests of Lender in the Aggregate Collateral.</u> Lender has consented to the terms of this Order and is entitled to the protections afforded a party acting in "good faith" under Code § 363(m) and adequate protection as set forth herein and to the extent required under Code §§ 361, 362, or 363 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a) <u>Priority of Prepetition Liens/Allowance of Lender's Claim</u>. Subject to the terms of Paragraph 6 of this Order: (1) the Prepetition Liens shall constitute First Priority Liens, subject only to the Permitted Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Lender's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than Eleven Million One Hundred Thousand Dollars and No Cents ($11,100,000.00), exclusive of accrued and accruing Allowable 506(b) Amounts.

(b) <u>Replacement Liens</u>. Lender is hereby granted the Replacement Liens. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be First Priority Liens, subject only to Permitted Liens and the Prepetition Liens, that are properly perfected, valid, and enforceable without any further action by Debtor or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtor is authorized and directed to execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may deem necessary or desirable from time to time.

(c) <u>Allowed Code § 507(b) Claim</u>. If and to the extent the adequate protection of the interests of Lender in the Aggregate Collateral granted to Lender pursuant to this Order proves insufficient, Lender shall have an allowed claim under Code § 507(b) in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Case that are incurred under any provision of the Code other than the Carveout, including, without limitation, Code §§ 503(b), 506(c), 507(a), or 552(b); and (2) the claims of any other party in

interest under Code § 507(b). The proceeds of the estate's Chapter 5 claims shall not be used for payment of any Code §507(b) claim of Lender accruing through the Termination Date.

(d) <u>Application of Cash Collateral</u>. Subject to Lender's obligation to remit Cash Collateral to Debtor pursuant to Paragraph 2(a) of this Order, Lender is authorized to apply all Cash Collateral now or hereafter coming into Lender's possession or control as follows: (1) first, to payment of Prepetition Debt consisting of Allowable 506(b) Amounts; and (2) second, to payment of other Prepetition Debt. All such applications shall be final, subject only to the right of parties in interest to object to such applications under and in accordance with Paragraph 6 of this Order.

(e) <u>No Surcharge</u>. In the exercise of its business judgment, with respect to expenses or other liabilities incurred by Debtor from the Filing Date through the Termination Date, Debtor hereby agrees that there shall be no surcharge of the Prepetition Collateral for any purpose, unless agreed to by Lender. Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its business and the preservation of the Aggregate Collateral from the Filing Date through the Termination Date and, therefore, includes all items potentially chargeable to Lender under Code § 506(c) for such period. Accordingly, Debtor (and any subsequently appointed Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against Lender or the Aggregate Collateral on account of expenses or other liabilities incurred by Debtor through the Termination Date; provided, however, that the waiver contained in this paragraph 5(e) shall be effective only upon the entry of a Final Order providing for such waiver. In reliance on the foregoing, Lender has agreed to the entry of this Order.

(f) <u>Prohibition Against Other Use of Cash Collateral; Incurrence of Postpetition Debt</u>. Except as provided for in this Order, (i) Debtor shall be prohibited from seeking to use Cash Collateral unless, in addition to the satisfaction of all requirements of Code § 363 as applicable, Lender has consented to such order, and (ii) Debtor shall be prohibited form seeking to incur debt secured by a lien which is equal to or superior to the Prepetition Liens or the Replacement Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements in Code § 364 Lender has consented to such order or such debt is first used to pay the Prepetition Debt in full in cash.

(g) <u>Waiver of Right to Return/Consent to Setoff</u>. Debtor hereby waives its right (a) to return any of the Aggregate Collateral pursuant to Code § 546(h) or otherwise, or (b) to consent to a setoff against or with respect to the Aggregate Collateral without the written consent of Lender.

(h) <u>Guaranty</u>. The Guaranty and all related documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Lender pursuant to Code § 363. Guarantor is and shall remain liable for the guaranteed obligations under each such Guaranty, including, without limitation, all amounts secured by Replacement Liens.

(i) <u>Intentionally Omitted</u>.

6. <u>Reservation of Rights; Bar of Challenges and Claims</u>.

(a) The stipulations and representations contained in this Order, including, without limitation, in Paragraphs C and D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) Debtor receives timely notice of a potential Challenge during the Investigation Period, and (ii) the Court rules against Lender in any such timely and properly filed Challenge.

(b) <u>Challenge Procedure</u>. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a good faith basis to assert a Challenge, it must notify Debtor's counsel in writing during the Investigation Period of its demand that Debtor initiate an adversary proceeding or other procedurally proper action relating thereto and, from the date that Debtor is so notified, Debtor shall have five (5) days to notify the Challenge Party of whether Debtor intends to initiate such action and ten (10) days to initiate such action. If Debtor notifies such Challenge Party that Debtor does not intend to initiate such an action, such Challenge Party shall have ten (10) days from the receipt of such notice to initiate an adversary proceeding or other procedurally proper action relating thereto. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of Court.

(c) <u>Bar of Challenges and Claims</u>. If Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by

Lender, or by an order of this Court, for cause shown), or if a Challenge is determined in favor of Lender, without further order of the Court, (1) the claims, liens and security interests of Lender shall be deemed to be finally allowed for all purposes in this Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, (2) Lender, the Prepetition Debt, and Lender's interests in the Aggregate Collateral shall not be subject to surcharge for any amounts incurred or accruing at any time; and (3) Debtor and its estate shall be deemed to have waived, released and discharged Lender and its respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

(d) Trustee Standing. For the avoidance of doubt, any trustee appointed or elected in these cases shall, until the expiration of the Investigation Period provided herein, and thereafter for the duration of any adversary proceeding or contested matter commenced in connection with a Challenge (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in this Order.

7. Miscellaneous Provisions.

(a) Force and Effect of Prepetition Documents. To the extent there exists any conflict among the Motion, the Prepetition Documents and the terms of this Order, this Order shall govern and control. Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents (including, without limitation, the reimbursement and indemnification provisions thereof) shall remain in full force and effect with respect to the Prepetition Debt.

(b) No Marshaling. Neither Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

(c) Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to Lender to the extent necessary to effectuate the provisions of this Order.

(d)     Intercreditor Agreement. Notwithstanding the commencement of this Case, the terms or Lender's consent to the entry of this Order, the Intercreditor Agreement is and shall remain in full force and effect.

(e)     Financial Information. Debtor is hereby directed to deliver to Lender such financial and other information concerning the business and affairs of Debtor and any of the Aggregate Collateral as may be required pursuant to the Prepetition Documents and as Lender shall reasonably request from time to time. Debtor is also directed to allow Lender and its representatives access to the premises for the purpose of enabling Lender to inspect and audit the Collateral and Debtor's books and records. Such access for such purpose shall be permitted during normal business hours; provided, however, that if Lender alleges fraud or gross mismanagement, Lender shall be permitted access to the premises for such purpose at any time without notice. Debtor is further directed to deliver to Lender evidence, satisfactory to Lender, that the Aggregate Collateral is insured for the full replacement value thereof, that all insurance policies required by the Prepetition Documents or obtained in connection with the Aggregate Collateral are maintained in full force and effect, and that Lender is named as loss payee on all such property insurance policies and named as additional insured on all such liability policies as its interests may appear.

(f)     No Waiver. Lender shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender and directed to Debtor. No failure of Lender to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Lender in the exercise of any right or remedy under this Order, the Prepetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Lender of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation its right to later assert: (1) that, any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 361, 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

(g)     Responsible Person. By permitting the use of Cash Collateral pursuant to this Order or consenting to entry of this Order, Lender shall not: (1) be deemed to be in control of

the operations, management, or liquidation of Debtor; or (2) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor.

(h) Amendments. Debtor and Lender may enter into amendments or modifications of the Prepetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest, and (b) notice of any such amendments or modifications is filed with this Court.

(i) Proof of Claim. Lender may, but shall not be required to, file a proof of claim with respect to any of the Prepetition Debt, and the stipulations and findings set forth in this Order shall be deemed to constitute a timely filed proof of claim in respect thereof.

(j) Binding Effect. Except as provided in Paragraph 7 herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 6 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

(k) Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from

handling or retaining of jurisdiction of any of the Case in this Court. The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt is indefeasibly paid in full in cash and discharged.

8. Notice of Final Hearing. The Final Hearing is scheduled for August 25, 2011, at 4:00 pm (ET) and may be continued from time to time without further notice other than that given in open court. Debtor is directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Lender, Debtor's other secured creditors, Debtor's twenty (20) largest usecured creditors, the United States Trustee, and all other parties that have requested notice in this Case, which service shall constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be, no later than seventy-two (72) hours prior to the commencement of such Final Hearing, filed with the Court and received by counsel for Debtor, Lender, and the United States Trustee. Any timely and properly filed and served objection will be heard at the Final Hearing.

_____
Hon. Kevin J. Carey
United States Bankruptcy Judge

Dated: August 15, 2011