# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---

|  |  |
|---|---|
| In re | : Chapter 11 |
| | : |
| MANISTIQUE PAPERS, INC., | : Case No. 11-12562 (KJC) |
| | : |
| Debtor.[1] | : |
| | : |
| | : Related to Doc. Nos. 147, 161, 191, 195 |

---

## FINAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507(b) AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING, AND (II) GRANTING ADEQUATE PROTECTION TO THE DIP LENDER

Upon the motion, dated September 20, 2011 (the "Motion") [Doc. No. 147], of Manistique Papers, Inc. (the "Debtor"), as debtor and debtor-in-possession, in the above-captioned case (the "Chapter 11 Case") for interim and final orders under sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the local bankruptcy rules for the District of Delaware (the "Local Bankruptcy Rules"), seeking:

(a) authorization for (i) the Debtor to obtain up to $5,000,000 in principal amount of postpetition financing (the "DIP Financing"), which amount may include up to $800,000 in letter of credit availability, on the terms and conditions set forth in the interim order (the "Interim Order") dated September 28, 2011 [Doc. No. 161], this final order (the "Final Order") and the

---

[1] The Debtor's federal tax identification number is 65-1290950. The Debtor's mailing address and corporate headquarters is 453 South Mackinac Avenue, Manistique, MI 49854-1399.

Debtor-in-Possession Credit Agreement (attached to this Final Order as Exhibit A, and as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Agreement"; together with all agreements, documents, pledges, instruments and/or amendments delivered in connection therewith, including the budget annexed hereto as Exhibit B, the "DIP Documents"), among the Debtor, as borrower, and mBank, as lender (with any participants thereto, the "DIP Lender"), and (ii) Jon William Johnson, John Gillard Erickson, Linda Lucille Benedetto and Larry Edward Koski (each of which is a "Pledgor", collectively, the "Pledgors", and together with the Debtor, the "DIP Credit Parties") to pledge $700,000 (the "DIP Pledged Cash") as collateral security for the obligations of the Debtor in respect of the DIP Financing;

(b)    authorization for the DIP Credit Parties to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to consider entry of the Interim Order; and

(d)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to consider the entry of this Final Order authorizing and approving the relief sought in the Motion on a final basis;

The Interim Hearing having been held by the Court on September 28, 2011 to consider the relief sought in the Motion on an interim basis, and the Court having entered the Interim Order on September 28, 2011.

The Debtors having filed with the Bankruptcy Court certifications of counsel with respect to the proposed Final Order on October 18, 2011 and October 19, 2011, and due and appropriate

notice of the proposed Final Order having been given by the Debtors to the Notice Parties (as defined herein).

Upon the record made by the Debtors and other parties in interest at the Interim Hearing and at the Final hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1. *Petition Date/Disposition/Jurisdiction.* On August 12, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. The Motion is granted in accordance with the terms of the Interim Order and this Final Order. Any objections to the Motion with respect to the entry of the Interim Order and this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. This Court has core jurisdiction over the Chapter 11 Case, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c) and (d), and the Local Bankruptcy Rules.

2. *Notice.* Notice of the Motion, the relief requested therein, the relief sought at the Interim Hearing and the relief sought at the Final Hearing was served by the Debtor by overnight mail to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to mBank; and (iv) all other parties who have requested notice in this case as of the date the Motion was filed or who may otherwise be entitled to notice (the "Notice Parties"). Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, the Interim Hearing and the Final

Hearing constitutes appropriate, due and sufficient notice thereof, complies with Bankruptcy Rules 4001(c) and (d) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

3. *Findings Regarding the DIP Financing.*

(a) Good cause has been shown for the entry of this Final Order.

(b) The Debtor has an immediate need to obtain the DIP Financing in order to, among other things, preserve the value of the Debtor's businesses, permit the orderly continuation of its businesses and for the other purposes set forth in the DIP Documents. The Debtor's use of the proceeds of the DIP Financing is necessary (x) to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of it estate and (y) to alleviate any concerns of trade vendors and employees of the Debtor.

(c) The Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtor granting the DIP Liens (as defined in paragraph 6 below) and the Superpriority Claims (as defined in paragraph 5 below) under the terms and conditions set forth in the Interim Order, this Final Order and the DIP Documents.

(d) The terms of the DIP Documents pursuant to the Interim Order, this Final Order and the DIP Agreement are fair and reasonable, reflect the Debtor's exercise of prudent

business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the DIP Financing have been the subject of extensive negotiations conducted in good faith and at arm's-length among the DIP Lender and the DIP Credit Parties, and all of the DIP Credit Parties' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all loans made to and all pledges made by the DIP Credit Parties pursuant to the DIP Documents, including letter of credit reimbursement obligations, and (ii) all other "Obligations" of the DIP Credit Parties under the DIP Documents, the Interim Order, this Final Order or in respect of overdrafts and related liabilities arising from treasury, depository and cash management services, or in connection with any automated clearing house transfers of funds, owing to the DIP Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lender in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Final Order or any provision thereof or hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtor has requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief requested, the Debtor's estate will be immediately and irreparably harmed. The Debtor may experience a significant reduction of the number of customers or vendors willing to do business with them due to a perceived lack of adequate liquidity or threatened long-term viability, thereby significantly reducing the value of the Debtor's estate. Consummation of the DIP Financing in

accordance with the Interim Order, this Final Order the DIP Documents is therefore in the best interest of the Debtor's estate consistent its fiduciary duties.

4.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    The Debtor was by the Interim Order and hereby is authorized to execute and enter into the DIP Documents and to borrow thereunder up to an aggregate principal amount of $5,000,000 (which amount may include up to $800,000 in letter of credit availability) (plus interest, fees and other expenses provided for in the DIP Documents), all in accordance with the terms of this Final Order, the DIP Agreement and the other DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court, the DIP Credit Parties were by the Interim Order and hereby are authorized and directed to perform all acts and to execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) and to pay all fees and expenses that the DIP Lender determines to be reasonably required or necessary for the DIP Credit Parties' performance of their obligations under the DIP Documents, including without limitation:

(i)    the execution, delivery and performance of the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications (A) shorten the Loan Maturity Date (as defined in the DIP Agreement) on terms and conditions other than those set forth in the DIP Agreement,

(B) increase the Loan Commitment (as defined in the DIP Agreement) or the rate of interest payable on the loans, or (C) change any Event of Default (as defined in the DIP Agreement), provided that copies of any amendments, waivers, consents or other modifications to or under the DIP Documents shall be provided by the Debtor to counsel to any statutory committee appointed in the Chapter 11 Case (the "Committee");

(iii)    the payment of the non-refundable closing fee to the DIP Lender, the other fees referred to in the DIP Documents, including letter of credit fees (including issuance and other related charges), and costs and expenses as may be due from time to time including, without limitation, fees and expenses of professionals retained by the DIP Lender, all of which constitute DIP Obligations;

(iv)    on an ongoing basis, the current cash payment of reasonable documented fees and expenses as and when due and payable under the DIP Documents, including, but not limited to, the reasonable documented fees and expenses of outside-retained legal counsel, financial advisors and any other professionals for or to the DIP Lender (which payments shall be made regardless of whether such amounts accrued prior to or after the date of the Interim Order, and shall not be limited by the line item amount for such fees and expenses as set forth in the Budget which is intended only as an estimate and not a limitation, and shall be paid without further motion, fee application or order of the Court), provided, that, with respect to the fees and expenses of any of the DIP Lender's professionals, such professionals shall submit copies of their invoices (the "Invoiced Fees") (redacted to take into account all applicable privileges and protections) to the Debtor, counsel for the Debtor, counsel for the Committee and the United States Trustee for the District of Delaware (collectively, the "Review Parties"), and payment on the Invoiced Fees shall be made within ten (10) days after the receipt by the Review

Parties (the "Review Period") without the necessity of filing formal fee applications; provided, however, that the Review Parties shall preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (a) the Debtor pays in full the Invoiced Fees, including the Disputed Invoiced Fees, and (b) any of the Review Parties file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the DIP Lender, of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees; and

(v)     the performance of all other acts required under or in connection with the DIP Documents.

(c)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the Interim Order, this Final Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(d)     The Debtor and the DIP Lender has agreed upon a form of budget (the "Budget"), annexed hereto Exhibit B, projecting cash flow for fifteen weeks (the "Budget Period"). On a weekly basis, the Debtor will provide to the DIP Lender and the Committee an updated Budget for the Budget Period in substantially the same format as the previous budget. The Committee shall also be entitled to the reporting set forth in sections 6.3(a), 6.3(i) and 6.3(j)

of the DIP Agreement. For the avoidance of doubt, the Budget provided for herein is the same as that required pursuant to the Final Order Authorizing Debtor to (A) Use Cash Collateral on an Emergency Basis; and (B) Grant Adequate Protection and other Relief to mBank (the "Final Cash Collateral Order") [Doc. No. 140]. Further to the avoidance of doubt, there is only one Budget for purposes of the Final Cash Collateral Order, the Interim Order and the Final Order, and the line items contained herein and therein are the same, and not in addition to, each other.

5.     *Superpriority Claims.*

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Debtor with priority over any and all administrative expense, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, including, without limitation (subject to entry of the Final Order), all proceeds or other amounts received in respect of the Debtor's claims and causes of action arising under state or federal law (collectively, the "Causes of Action"), and any proceeds or other amounts received in respect thereof and property received thereby whether by judgment,

settlement or otherwise; provided, however, notwithstanding the foregoing, the DIP Lender shall not have a Superpriority Claim on chapter 5 avoidance actions for purposes of this Final Order.

6. *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution by the DIP Credit Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any DIP Collateral (as defined in this paragraph 7), the following security interests and liens were by the Interim Order and hereby are granted by the DIP Credit Parties to the DIP Lender, for its benefit and the benefit of any participants (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral", and all such liens and security interests granted to the DIP Lender, for its benefit and for the benefit of any participants, pursuant to the Interim Order, this Final Order and the DIP Documents, the "DIP Liens"):

(a) First Lien On Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender (for its own benefit and the benefit of the participants) was by the Interim Order and hereby is granted a valid, binding, continuing, enforceable, fully-perfected first priority senior lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtor, whether existing on or as of the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, enforceable and unavoidable liens or are not subject to valid, enforceable and unavoidable liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, the Debtor's one share interest in the Forest Products Cooperative, Inc., any and all unencumbered cash, accounts

receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing. The Unencumbered Property shall include the proceeds of any Causes of Action and any property received or recovered thereby whether by judgment, settlement or otherwise; provided, however, notwithstanding the foregoing, the DIP Lender shall not have a DIP Lien on chapter 5 avoidance actions for purposes of this Final Order.

(b)     <u>Liens Junior To Certain Existing Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lender (for its own benefit and the benefit of the participants) was by the Interim Order and hereby is granted a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtor (other than the property described in clauses (a) and (c) of this paragraph 6, as to which the DIP Liens will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected, enforceable and unavoidable liens in existence immediately prior to the Petition Date or to valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Lender, for its own benefit and for the benefit of the participants, are immediately junior only to such valid, perfected and unavoidable liens.

(c)     <u>Priming Liens</u>.

(i)     Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Lender (for its own benefit and the benefit of the participants) was by the Interim Order and hereby is granted a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien (collectively, the "<u>Priming Liens</u>") on, and security interest in, (1) all of the Collateral (as that term is defined in that certain Credit Agreement (the "<u>Prepetition Loan Agreement</u>") dated as of November 16, 2006, by and between Debtor and Lender (the "<u>Prepetition Lender</u>"), as amended, modified and supplemented from time to time) existing as of the Petition Date, and all proceeds, rents, issues, profits and products thereof (collectively, the "<u>Prepetition Collateral</u>"), and (2) $700,000 in collateral security (the "<u>Prepetition Pledged Cash</u>", and together with the DIP Pledged Cash, the "<u>Pledged Cash</u>") pledged as collateral to the Prepetition Lender in respect of the Prepetition Loan Agreement as set forth in those certain Pledge Agreements by Jon William Johnson, John Gillard Erickson, Linda Lucille Benedetto and Larry Edward Koski.

(ii)    The DIP Liens on the Prepetition Collateral and the Prepetition Pledged Cash shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral and the Prepetition Pledged Cash (including, without limitation, the Replacement Liens and the Allowed Code § 507(b) Claim granted pursuant to the Final Cash Collateral Order (and any interim orders) (as those terms are defined therein)), but shall not be senior to any valid, perfected, enforceable and unavoidable security interests in and liens of other parties, if any, on the Prepetition Collateral existing as of the Petition Date or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Lender become subject after the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(iii)     For the avoidance of doubt, the Priming Liens remain subject to, and shall not be senior to, the Permitted Liens, as such term is defined in the Final Cash Collateral Order (and any interim orders).  Further to the avoidance of doubt, no carveout was granted pursuant to the Interim Order or is granted pursuant to this Final Order, and the Carveout granted pursuant to the Final Cash Collateral Order (and any interim orders) may not be used to pay any fees or expenses incurred by any entity, including Debtor or the Carveout Professionals (as such term is defined in the Final Cash Collateral Order (and any interim orders)), in connection with claims or causes of action adverse to DIP Lender's interests in the DIP Collateral, including (1) preventing, hindering or delaying DIP Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (2) using or seeking to use DIP Collateral or incurring indebtedness in violation of the terms hereof, or selling any DIP Collateral without the DIP Lender's consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the DIP Financing and the DIP Documents or any mortgages, liens or security interests with respect thereto or any other rights or interests of the DIP Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against the DIP Lender; provided, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals (a) in connection with the negotiation, preparation and entry of the Interim Order, this Final Order or any amendment thereto or hereto consented to by the DIP Lender, (b) in connection with any successful challenge to the DIP Lender's declaration of the occurrence of an Event of Default.  Nothing in the Interim Order or herein shall be construed as consent by the DIP Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of the DIP Lender to object to the

allowance and payment of such fees, costs or expenses, or the right of the DIP Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis.

(d)    Liens Senior To Certain Other Liens.  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code or otherwise.

7.    *Protection of DIP Lender's Rights.*  So long as there are any DIP Obligations or the DIP Lender has any Loan Commitments (as defined in the DIP Agreement) under the DIP Agreement, the Prepetition Lender and the Pledgors shall take no action to foreclose upon or recover in connection with the liens granted pursuant to the Final Cash Collateral Order (and any interim orders), the Prepetition Loan Agreement and other Loan Documents (as that term is defined in the Prepetition Loan Agreement), the Interim Order, or this Final order, as applicable, or otherwise exercise remedies against any DIP Collateral without the prior written consent of the DIP Lender.

8.    *Remedies after Event of Default.*

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise (i) immediately upon the occurrence of an Event of Default (as defined in the DIP Agreement), all rights and remedies under the DIP Documents, other than those rights and remedies against

the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence of an Event of Default, and the giving of five (5) business days' prior written notice to the Debtor (with a copy to counsel for any Committee and to the United States Trustee for the District of Delaware), all rights and remedies against the DIP Collateral provided for in the DIP Documents the Interim Order, and this Final Order (including, without limitation, the right to setoff monies of the Debtor's in accounts maintained with the DIP Lender or any affiliate thereof), and, if requested by the DIP Lender, the Debtor shall surrender the DIP Collateral and otherwise cooperate with the DIP Lender in the exercise of its rights and remedies under the DIP Documents and applicable nonbankruptcy law.

(b)     Immediately upon written notice to the Debtor of an Event of Default (with a copy to counsel for any Committee and to the United States Trustee for the District of Delaware), the DIP Lender shall have the right to file a motion to convert this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code to be heard on five (5) business days' notice to the Debtor, the Committee, the U.S. Trustee and any creditors who have filed requests for service in this Chapter 11 Case.

(c)     In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the DIP Credit Parties hereby waive any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in the Interim Order, this Final Order or the DIP Documents.  In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral; provided, however, with respect to any commercial tort claim proceeds, DIP Lender

will apply such proceeds to the DIP Obligations only after all other proceeds from the DIP Collateral, excluding the DIP Pledged Cash, are applied to the DIP Obligations. For the avoidance of doubt, the DIP Lender agrees to exhaust all reasonable remedies against the Debtor prior to exercising any rights against the Pledged Cash. The DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents, the Interim Order or this Final Order shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

9. *Limitation on Charging Expenses Against DIP Collateral.* Notwithstanding anything to the contrary contained in the Interim Order or herein, (a) no costs or expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, (b) no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, and (c) nothing contained in the Interim Order or this Final Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

10. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of the Interim Order, this Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or

indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

11.    *Use of DIP Financing.*  The Debtor was by the Interim Order and hereby is authorized to use the DIP Financing (a) commencing on the date of the Interim Order and through and including the Loan Maturity Date under the DIP Agreement for the same purposes as set forth in and in accordance with the terms and conditions of this Final Order and the DIP Documents, including, without limitation, the Budget; provided that, except on the terms and conditions of this Final Order, the Debtor shall be enjoined and prohibited from at any time using the DIP Financing, and (b) to the extent required to pay those expenses enumerated in the Budget, as and when such expenses become due and payable, subject to the Permitted Variance (except with respect to the payment of the DIP Lender's professionals' fees and expenses, which shall not be limited by the specified line item amount in the Budget, which is intended only as an estimate, but which shall be based upon actual invoiced amounts in accordance with paragraph 4(b)(iv) herein). "Permitted Variance" is defined herein as, with respect to each weekly line item in the Budget, an amount equal to 105% of the amount set forth in the Budget, tested on a rolling two-week basis; provided, however, that the aggregate, cumulative variance for all line items shall not exceed $25,000.

12.    *Perfection of DIP Liens.*

(a)    The DIP Lender was in the Interim Order and hereby is authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over any DIP Collateral, or take any other action in order to validate and perfect the liens and security interests granted to them thereunder or hereunder. Whether or not the DIP Lender shall, in its

sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any DIP Collateral, or otherwise confirm perfection of the liens and security interests granted to them thereunder or hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination as of the date of entry of the Interim Order. The Debtor shall execute and deliver (and shall cooperate with the other DIP Credit Party to execute and deliver) to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(c)     Pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, or otherwise transfer any such interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting the DIP Lender a senior security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP Lender in accordance with the terms of this Final Order and the DIP Documents.

13.  *Preservation of Rights Granted Under the Order*.

(a)  No claim or lien having a priority senior to or *pari passu* with those granted by the Interim Order, this Final Order or the DIP Documents to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), or the Loan Commitment under the DIP Agreement remain outstanding, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)  Unless all DIP Obligations shall have been indefeasibly paid in full in cash, (i) the Debtor shall not seek, and it shall constitute an Event of Default under the DIP Agreement if the Debtor or any other DIP Credit Party seeks, or if there is entered, any modification of this Final Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender. or (ii) it shall constitute an Event of Default under the DIP Agreement if any order is entered converting or dismissing the Chapter 11 Case.  If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims and the DIP Liens shall continue in full force and effect and shall maintain their priorities granted in the Interim Order and this Final Order until all DIP Obligations shall have been indefeasibly paid in full in cash (and that such Superpriority Claims and DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (y) this

Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority or enforceability of the DIP Liens. Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations incurred by the Debtor to the DIP Lender prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits granted pursuant to section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Documents with respect to all DIP Obligations.

(d)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Case, or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Final Order and the DIP Documents shall continue in the Chapter 11 Case, in any successor case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the DIP

Obligations, the Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash, and the Loan Commitments under the DIP Agreement have been terminated.

14. *Non-Debtor Guarantees and Pledges.* Nothing contained in the Interim Order or in this Final Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantors to the Prepetition Lender, and any pledges of collateral made to the Prepetition Lender by any non-debtor guarantors or other parties, pursuant to the Prepetition Loan Agreement and other Loan Documents.

15. *Limitation on Use of DIP Financing Proceeds and DIP Collateral.* The Debtor shall use the proceeds of the DIP Financing solely as provided in the Interim Order, this Final Order and in the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no loans under the DIP Agreement or proceeds of any letters of credit may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise) for the purpose of objecting to or challenging the validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by the DIP Lender or asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP Obligations, or against the DIP Lender or the participants in the DIP Financing, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (b) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on any DIP Collateral in accordance with the DIP Documents, the Interim Order or this Final Order, (c) to seek to modify any of the rights granted to the DIP Lender under the Interim Order, this Final Order or under the DIP Documents, in each

of the foregoing cases without the DIP Lender's prior written consent, which may be given or withheld in the exercise of its sole discretion, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court, and (ii) permitted under the DIP Documents.

16.     *Exculpation.*  Nothing in the Interim Order, this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or upon any participants in the DIP Financing any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Lender and/or any participants in the DIP Financing comply with any obligations under the DIP Documents and the obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Lender and any participants in the DIP Financing shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the DIP Credit Parties.

17.     *Order Governs.*  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.  For the avoidance of doubt, except as provided herein, the provisions of the Final Cash Collateral Order are in full force and effect in this Chapter 11 Case.

18.     *Retention of Jurisdiction.*  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the

confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

19.    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Final Order including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including without limitation, the DIP Lender, any participants in the DIP Financing, the Prepetition Lender, the Pledgors, any committee appointed in this case and the Debtor and its successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and any participants in the DIP Financing and the Debtor and its successors and assigns, provided that, the DIP Lender shall have no obligation to permit the use of DIP Collateral or to extend any financing to any chapter 7 trustee chapter 11 trustee or similar responsible person appointed for the estate of the Debtor.

20.    *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Agreement or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the DIP Documents, the DIP Lender and any participants in the DIP Financing shall not (i) be deemed to be in "control" of the operations of the Debtor; (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders, or estate; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

21.    *Credit Bid.*  The DIP Lender shall have the unqualified right to credit bid all or any portion of the outstanding DIP Obligations in any sale of the DIP Collateral, as applicable, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

22.    *Insurance.*  To the extent the Prepetition Lender is listed as loss payee under the parties' insurance policies, the DIP Lender is also deemed to be the loss payee under the parties' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of any obligations due under the Prepetition Loan Agreement.

23.    *No Impact on Certain Contracts or Transactions.*  No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 or 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Final Order.

24.    *Effectiveness.*  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

25.    *Headings.*  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

Dated: Wilmington, Delaware
October ___19___, 2011

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge