# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>MANISTIQUE PAPERS, INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 11-12562 (KJC)<br><br>**Hearing Date:**<br>December 13, 2011 at 3:00 p.m. (ET)<br>**Objection Deadline:**<br>December 6, 2011 at 4:00 p.m. (ET) |

## DEBTOR'S MOTION FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENTS

The above-captioned debtor and debtor in possession (the "Debtor"), hereby moves (the "Motion"), pursuant to sections 105(a), 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order granting it the authority to enter into the insurance premium finance agreements in the forms attached hereto as **Exhibits A and B** and granting related relief. In support of this Motion, the Debtor respectfully states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue of the Debtor's chapter 11 case is proper in this district pursuant to 28 U.S.C. §§ 1408(1) and (2).

### Background

2. On August 12, 2011, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

---

[1] The last four digits of the Debtor's federal tax identification number are 0950. The Debtor's mailing address and corporate headquarters is 453 South Mackinac Avenue, Manistique, MI 49854-1399.

3. The Debtor has been operating its business and managing its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

4. On August 23, 2011, the Office of the United States Trustee for the District of Delaware (the "US Trustee"), appointed (D.I. 58) an official committee of unsecured creditors (the "Committee").

5. As a debtor in possession, it is necessary for the Debtor to maintain adequate insurance coverage, among which, includes commercial property, general liability, commercial umbrella, automobile liability, executive liability, and worker's compensation.

6. In order for the Debtor to maintain its insurance coverage, the Debtor is prepared to execute the following insurance financing agreements: (a) Insurance Premium Finance Agreement with DFC Acceptance Corp. ("DFC"), attached as **Exhibit A** (the "DFC Finance Agreement"); and (b) Commercial Premium Finance Agreement and Disclosure Statement, attached hereto as **Exhibit B** (the "FIFC Finance Agreement" and, together with the DFC Finance Agreement, the "Premium Finance Agreements"), for the financing of the Debtor's commercial property, general liability, commercial umbrella, automobile liability, executive liability, and worker's compensation insurance policies (the "Policies") upon court approval, with FIRST Insurance Funding Corp. ("FIFC").

7. Pursuant to the DFC Finance Agreement, DFC will provide financing to Debtor for the purchase of the commercial property, general liability, commercial umbrella, automobile liability, and executive liability policies (the "DFC Policies") which are essential for the operation of Debtor's business. Under the DFC Finance Agreement, the total premium amount is $348,999.00 and the total amount to be financed is $253,999.00. Under the DFC Finance Agreement, Debtor will become obligated to pay DFC the sum of $263,656.16 in addition to a down payment that has already been paid in the amount of $95,000.00 and the balance in eight

(8) monthly installments of $32,957.02 each. The installment payments are due on the 10th day of each month commencing on December 10, 2011. As collateral to secure the repayment of the indebtedness under the DFC Finance Agreement, Debtor is granting DFC a security interest in, among other things, the unearned premiums of the DFC Policies.

8. Pursuant to the terms of the DFC Finance Agreement, Debtor is appointing DFC as its attorney-in-fact with the irrevocable power to cancel the policies and collect the unearned premium in the event Debtor is in default of its obligations under the DFC Finance Agreement.

9. Pursuant to the FIFC Finance Agreement, FIFC will provide financing to Debtor for the purchase of the worker's compensation policy (the "FIFC Policy") which is essential for the operation of Debtor's business. Under the FIFC Finance Agreement, the total premium amount is $186,980.00 and the total amount to be financed is $121,537.00. Under the FIFC Finance Agreement, Debtor will become obligated to pay FIFC the sum of $122,857.21 in addition to a down payment that has already been paid in the amount of $65,443.00 and the balance in seven (7) monthly installments of $17,551.03 each. The installment payments are due on the 1st day of each month commencing on December 1, 2011. As collateral to secure the repayment of the indebtedness under the FIFC Finance Agreement, Debtor is granting FIFC a security interest in, among other things, the unearned premiums of the FIFC Policy. The FIFC Finance Agreement provides that the law of Illinois governs the transaction.

10. Pursuant to the terms of the FIFC Finance Agreement, Debtor is appointing FIFC as its attorney-in-fact with the irrevocable power to cancel the policies and collect the unearned premium in the event Debtor is in default of its obligations under the FIFC Finance Agreement.

11. Debtor, DFC, and FIFC have reached an agreement that the adequate protection appropriate for this situation would be as follows:

    a) Debtor be authorized and directed to timely make all payments due under the Premium Finance Agreements and FIFC and DFC be authorized to receive and apply such

payments to the indebtedness owed by Debtor to FIFC and DFC as provided in the Premium Finance Agreements.

b) If Debtor does not make any of the payments due under the Premium Finance Agreements as they become due, the automatic stay shall automatically lift to enable FIFC and DFC, and/or third parties, including insurance companies providing the coverage under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to the indebtedness owed to FIFC or DFC by Debtor. In exercising such rights, FIFC, DFC, and/or third parties shall comply with the notice and other relevant provisions of the Premium Finance Agreements.

## **Relief Requested**

12. By this Motion, the Debtor seeks entry of an order, pursuant to sections 105, 362, 363 and 364 of the Bankruptcy Code, approving the Premium Finance Agreements and granting related relief.

## **Basis For Relief**

13. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

14. Section 364(c) of the Bankruptcy Code permits this Court to authorize the Debtor to enter into the Premium Finance Agreements. That section provides in pertinent part: "If the [debtor-in-possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of

4

this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt [] secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364(c)(2).

15. The Debtor is unable to obtain credit on terms more favorable than those contained in the Premium Finance Agreements. Indeed, the proposed premium financing arrangement is the only form of premium financing offered by the insurance industry. Because of the obvious importance of maintaining insurance coverage with respect to business activities, and because financing the premiums on favorable terms will preserve the Debtor's cash flow, the Debtor believes that it would be in the best interest of its estate and creditors to enter into the Premium Finance Agreements.

16. Furthermore, the Debtor believes that the terms of the Premium Finance Agreements are commercially fair and reasonable including the granting of liens on the Policies to FIFC and DFC. The Debtor is required to maintain adequate insurance coverage and without it, would be forced to cease operations. The Debtor is unable to obtain unsecured credit to fund the Polices.

17. The relief requested by this Motion is warranted and appropriate under the circumstances. The Debtor submits that authorization of the Premium Finance Agreements will ensure that the Debtor can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including the Debtor's secured creditors.

## Requests For Waiver Of Stay

18. In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, it is essential that approval of the

Premium Finance Agreements is effective immediately to ensure that there is no lapse in coverage with the Policies. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Notice

19. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Debtor's secured lender, mBank; and (iv) those persons who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules. Given the nature of the relief requested, the Debtor submits that no other or further notice is necessary and asks the Court, pursuant to Bankruptcy Rule 9007, to approve the same.

### No Prior Requests

20. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order authorizing it to enter into the Premium Finance Agreements with FIFC and DFC, and the Debtor and FIFC and DFC be authorized and directed to take all actions necessary or appropriate to affect said agreement and for such other and granting such other further relief as is just and proper.

Dated: November ___, 2011.
Wilmington, Delaware

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                /s/
                Eric D. Schwartz (No. 3578)
                Daniel B. Butz (No. 4227)
                Matthew B. Harvey (No. 5186)
                1201 North Market Street, 18th Floor
                P.O. Box 1347
                Wilmington, DE 19899
                Telephone: 302.658.9200
                Facsimile: 302.425.4673

                -and-

                Timothy F. Nixon
                Carla O. Andres
                GODFREY & KAHN, S.C.
                333 Main Street, Suite 600
                P.O. Box 13067
                Green Bay, WI 54307-3067
                Telephone: (920) 436-7687
                Facsimile: (920) 436-7988

                *Counsel for Debtor and Debtor in Possession*